# BOYD v. SECOND JUDICIAL DISTRICT COURT

No. 2832

. February 5, 1929.                    274 P. 7.

*James T. Boyd,* for Petitioner:

*Cooke & Stoddard,* for Respondent:

## OPINION

By the Court, DUCKER, C. J.:

This is an original proceeding in mandamus. Petitioner is an attorney at law, and seeks the writ to

compel respondent to admit him to appear as an attorney for the defendant in that certain action pending in the Second judicial district court of the State of Nevada in and for the county of Washoe, entitled Gilbert Mammoth Last Hope Mines Company, a Corporation, Plaintiff, v. W. C. Lamb, Defendant.

A brief statement of the other allegations of the petition follows:

In December, 1925, petitioner was employed as an attorney by said Gilbert Mammoth Last Hope Mines Company to defend it in an action brought against it in the Fifth judicial district court of Nye County by one B. F. Curler, wherein the latter charged the said company with having fraudulently converted to its own use 35,000 shares of stock of said company, alleged to be his property, to his injury and damage in the sum of $35,000.

Petitioner held various interviews and conferences with the said W. C. Lamb and the officers and directors of the said company, and from the information secured from them prepared and filed its answer. He also appeared at the trial of said cause as attorney for the company and examined and cross-examined witnesses and argued said cause to the court.

Curler prevailed in said action, and on the 30th day of November, 1926, was awarded a judgment in the sum of $28,210. In the month of December, 1926, petitioner ceased to be the attorney for the company in said action, and ceased to advise the company in any manner whatsoever.

At all times from the date of the incorporation of said company said W. C. Lamb was a stockholder and the principal promoter in the sale of the stock of said company. On or about the 1st day of March, 1926, he was elected a director and vice president and general manager of the corporation, and at all times from the date of its incorporation had access to its records and files.

On the 16th day of January, 1927, the company commenced the said action against said W. C. Lamb

in the Second judicial district court, and Lamb employed the petitioner to aid in preparation of an answer, and otherwise to aid and assist in the defense during the trial of said cause. The company objected to petitioner acting as an attorney for Lamb, and, on motion duly noticed and heard, the trial court rendered a decision enjoining petitioner from appearing as an attorney for Lamb in the action brought against him, and from in any manner proceeding in said action as his attorney.

■ The doctrine that a court has power in a proper case to enjoin an attorney from appearing for a party is well established. People v. Gerold, 265 Ill. 448, 107 N. E. 165, Ann. Cas. 1916A, 636; State v. Halstead, 73 Iowa, 376, 35 N. W. 457; Brown v. Miller, 52 App. D. C. 330, 286 F. 994, and cases cited; Weeks on Attorneys at Law, secs. 120–271; 2 R. C. L. sec. 53, p. 975.

This authority is not dependent upon any positive provisions of law. It is a power inherent in a court, and its exercise is designed to prevent injustice in a particular case.

"It is a well-settled general rule," says Mr. Thornton in his work on Attorneys at Law, "that an attorney cannot represent conflicting interests, or undertake the discharge of inconsistent duties. When he has once been retained and received the confidence of a client, he cannot accept a retainer from, or enter the services of, those whose interests are adverse to his client in the same controversy, or in matters so closely allied thereto as to be, in effect, a part thereof." 1 Thornton on Attorneys at Law, sec. 174.

This formulation of the general rule is fairly deducible from the authorities. 6 C. J. p. 619, and cases cited in note 45. The reason for the rule is well stated in Strong v. International Building Loan & Investment Union et al., 183 Ill. 97, 55 N. E. 675, 47 L. R. A. 792:

"The rule is a rigid one, and designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner

from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests rather than to enforce to their full extent the rights of the interests which he should alone represent."

■ While we believe that the petitioner in this case is entirely sincere in his belief and claim of his right to represent Lamb in the company's suit against him, we cannot say that the evidence was not sufficient to warrant the court in excluding him. The petitioner does not appear against his former client in the same controversy, it is true, but the present suit rises out of the Curler case. It is based on the claim that it was due to certain false representations made by Lamb to the board of directors of the company that the board canceled 35,000 shares of the stock of the company theretofore issued and delivered to said Curler as compensation for his services as attorney for the company, and by reason of which Curler prevailed in the action. Such a close connection is shown between the cases that we are not prepared to say that a situation may not arise in which petitioner would be disqualified to represent Lamb against the company. He acted as attorney for the company in the Curler case, and during his employment had received much information concerning its affairs from Lamb and other officers of the company. This appears from the affidavit made by the two directors used on the motion to exclude petitioner. The court below, on commenting on the extent of petitioner's information, said:

"In the Curler case the defendant (Lamb) and the members of the board of directors of plaintiff evidently worked in harmony in the defense of that action, and before it was tried defendant became vice president and general manager of plaintiff company. In the defense of that action the officers of the company must necessarily have discussed matters involved in the litigation very thoroughly; in fact, Mr. Lamb appeared to be the 'moving spirit.' All records, books and files of the

company were available to counsel, and were gone into thoroughly, and naturally their method of doing business and all business transactions were known to Mr. Boyd, especially with reference to the matters of which this case is the outgrowth."

Certainly the information was of a confidential nature, and petitioner could neither disclose nor use his knowledge of it in opposition to the interests of the company without its consent. There is no merit in the contention that the information gained by petitioner does not come within the class of privileged communications because acquired from Lamb or the officers of the company in his presence. The company only could release petitioner from his obligation of secrecy.

It was unnecessary for the court to ascertain in detail the extent to which the company's affairs might have a bearing upon the matters involved in the present case, or of petitioner's knowledge in that regard. Brown v. Miller, supra. The courts must necessarily be left to exercise a sound discretion in cases of this character, and we find no abuse of discretion in this case.

The alternative writ and proceedings should therefore be dismissed.