119 P.3d 1219 (2005)
Frederick WAID; M. Nafees Nagy, M.D.; Noel A. Gage; and Gage & Gage, LLP, Petitioners,
v.
The EIGHTH JUDICIAL DISTRICT COURT of the State of Nevada, In and For The COUNTY OF CLARK, and the Honorable David Wall, District Judge, Respondents, and
Vestin Fund I, LLC, a Nevada Limited Liability Company; Vestin Fund II, LLC, a Nevada Limited Liability Company; and Daniel Tabas, an Individual, Real Parties in Interest.
No. 42322.
Supreme Court of Nevada.
September 22, 2005.
*1220 Lemons Grundy & Eisenberg and Robert L. Eisenberg, Reno, for Petitioners.
Beckley Singleton, Chtd., and Ike Lawrence Epstein, and Daniel F. Polsenberg, Las Vegas; Paul R. Connaghan, Las Vegas, for Real Parties in Interest.
Before the Court En Banc.[1]

OPINION
PER CURIAM.
This original petition for a writ of mandamus challenges a district court order disqualifying petitioner Noel Gage and his firm, petitioner Gage & Gage, LLP, from representing petitioners Frederick Waid and M. Nafees Nagy, defendants in the underlying action. We conclude that petitioners have not demonstrated that the district court abused its discretion in ordering disqualification. First, we adopt the Seventh Circuit's test for evaluating when a prior matter and a current matter are substantially related, and we determine that the district court did not abuse its discretion in this regard. Second, petitioners have not met their burden to demonstrate that the district court's conclusion, that the real parties in interest Vestin Fund I and Vestin Fund II were Gage's former clients, was arbitrary or capricious. Accordingly, we deny the petition.

FACTS
In the underlying district court complaint, filed in late 2002, Vestin Fund I and Vestin *1221 Fund II, along with real party in interest Daniel Tabas, seek to collect on personal guarantees for an $11.5 million loan. The original lender, Vestin Mortgage, Inc., assigned its interest in the loan to the Vestin Funds and Tabas. Apparently, the borrower, SBG Group, defaulted and filed bankruptcy, and so the Vestin Funds and Tabas made demand on the guarantors, Waid and Nagy. The defenses asserted in Waid and Nagy's answer include waiver and estoppel, a defective demand under the governing guaranty agreements, and oral agreements to extend the loan until new financing could be found, all of which would preclude enforcement of the guaranties. The parties conducted an early case conference under NRCP 16.1 and filed a report.
In October 2003, approximately one month before the discovery cutoff, Waid and Nagy substituted Noel Gage as their counsel, in place of their former attorney. Gage immediately served a supplemental NRCP 16.1 disclosure that listed several additional witnesses. These witnesses were officers and employees of the Vestin Funds and business entities affiliated with the Vestin Funds: Vestin Mortgage, Inc., and Vestin Group, Inc. Vestin Mortgage is the manager of the Vestin Funds and is wholly owned by Vestin Group (which is a publicly traded corporation).
In describing the anticipated testimony of each of these newly disclosed witnesses, Gage included the following language:
[The witness] is also expected to testify as to his knowledge of any lawsuits against or investigations by state and federal authorities into the above named individuals and entities, and the outcome of such lawsuits/investigations. [The witness] is also expected to testify as to his knowledge of the "Ponzi" scheme being conducted by the above named individuals and entities and its effect on Defendants, the underlying loan, the alleged underlying guaranty, and why these matters are extremely relevant to this matter.
The Vestin Funds filed a motion to disqualify Gage and his firm. The motion was supported by an affidavit by Vestin Group's in-house counsel, Paul Connaghan, detailing Gage's representation of "the Vestin affiliates" in certain prior litigation that occurred in 1999.
The 1999 litigation arose from Vestin Group CEO Michael Shustek's former role as CEO of an entity called Del Mar Mortgage, Inc. Two news articles appearing in Las Vegas papers in 1997 referenced an anonymous letter that accused Del Mar of running a "Ponzi" scheme. Shustek was quoted in the articles as denying the allegations.
It appears that in 1999, the Nevada authorities seized control of Del Mar and its assets and placed them under conservatorship. Shustek hired Noel Gage to file suit against several state departments, divisions and employees; Shustek was the only named plaintiff.
According to petitioners, state personnel sexually harassed Del Mar's female employees during their investigation of Del Mar. They contend that Shustek's purpose in filing his action was to stop the harassment and seek damages for it. In contrast, the Vestin Funds assert that the suit's purpose was to recover Del Mar's seized assets.
Gage undisputedly represented both Shustek and Del Mar in the 1999 litigation. The Vestin Funds allege that Gage participated in confidential meetings between several high-level Del Mar employees, and thereby gained confidential information about Del Mar and the alleged Ponzi scheme. Gage was also given a copy of the anonymous letter referenced in the 1997 newspaper articles. Vestin Group's in-house counsel, Paul Connaghan, who was then outside counsel, also represented Del Mar and Shustek.
The 1999 case was resolved in March 1999 by a stipulation between Shustek and the State of Nevada. The stipulation makes no reference to state personnel's alleged sexual harassment of Del Mar employees. Rather, under the stipulation, the state returned Del Mar's assets and permitted Del Mar to continue operating under certain conditions, *1222 most notably that Del Mar would stop promising new investors that they could recover their investment in forty-eight hours. Also, Shustek's involvement with Del Mar was limited. The stipulation was approved by Del Mar, which agreed to be bound by its terms. Finally, the stipulation was also approved by other Del Mar affiliates, including Sunderland Acquisition Corporation and Capsource, Inc., which similarly agreed to be bound by its terms.
According to the Vestin Funds, Sunderland is Vestin Group's predecessor, and Capsource is Vestin Mortgage's predecessor. They do not specify exactly how the successions took place. But it appears that several of the former high-level Del Mar employees who allegedly participated in meetings with Gage during the 1999 litigation are now officers for one or more of the Vestin entities. In addition, Michael Shustek is now the CEO of Vestin Group, and he also serves as the resident agent for Vestin Fund I. As noted above, Vestin Mortgage serves as the manager of both Vestin Fund I and Vestin Fund II.
The district court held a hearing and thereafter entered an order disqualifying Gage and his firm. The district court stated that based on the information presented to it, a substantial relationship existed between the issues before the court and Gage's prior representation of "the [Vestin Funds'] Affiliates," and thus disqualification was warranted. This writ petition followed.

DISCUSSION
Petitioners maintain that the district court improperly disqualified Gage. Disqualification in this matter is governed by SCR 159,[2] which provides:
Rule 159. Conflict of interest: Former client. A lawyer who has formerly represented a client in a matter shall not thereafter:
1. Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents, preferably in writing, after consultation; or
2. Use information relating to the representation to the disadvantage of the former client except as Rule 156 would permit with respect to a client or when the information has become generally known.
The district court has broad discretion in attorney disqualification matters, and this court will not overturn its decision absent an abuse of that discretion.[3] Attorney disqualification orders are properly challenged through a petition for a writ of mandamus.[4]
Disqualification under SCR 159 is warranted only if a prior representation and the current representation are substantially related. The burden of proving that two matters are substantially related falls on the party seeking disqualification.[5] We have recognized that
[i]n proving that a prior representation is substantially related to present litigation, however, the moving party is not required to divulge the confidences actually communicated, nor should a court inquire into whether an attorney actually acquired confidential information in the prior representation which is related to the current representation. The court should instead undertake a realistic appraisal of whether confidences might have been disclosed in the prior matter that will be harmful to *1223 the client in the later matter.[6]
A superficial similarity between the two matters is not sufficient to warrant disqualification; rather, the focus is properly on the precise relationship between the present and former representation.[7]
The Seventh Circuit has formulated a three-part test for determining when a former and present matter are substantially related, which has been adopted by at least two state supreme courts, Illinois and Missouri.[8] The Seventh Circuit test requires the trial court to do the following: (1) make a factual determination concerning the scope of the former representation, (2) evaluate whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters, and (3) determine whether that information is relevant to the issues raised in the present litigation.[9] As this framework is useful in analyzing former client conflicts of interest, we adopt it for Nevada.
Here, the district court concluded that the former representation encompassed allegations that Del Mar and its affiliates, officers and directors were involved in a "Ponzi" scheme. Consequently, it was reasonable for the district court to infer that confidential and likely quite sensitive information was given to Gage during the prior representation. Finally, petitioner's supplemental NRCP 16.1 disclosure itself proclaims that information concerning the alleged "Ponzi" scheme, the subject of the prior representation, is "extremely relevant" to the current litigation. Thus, the district court did not abuse its discretion in determining that the 1999 litigation and the current matter are substantially related.
But for disqualification to be appropriate, Gage must have represented a client in the 1999 litigation. Generally, a lawyer representing a corporate entity represents only the entity, not its officers, directors, or shareholders, and not any related entities such as parents, subsidiaries or sister companies.[10] But the inquiry into whether an attorney-client relationship has been established is very fact-specific, and so in various situations, courts have found a sufficient connection to warrant the lawyer's disqualification.[11] Also, a successor corporation succeeds to the prior corporation's rights and *1224 liabilities, including the prior corporation's right to protect confidential information transmitted to the prior corporation's counsel.[12]
The district court concluded that Gage had "previous[ly] represent[ed] the [Vestin Funds'] Affiliates." Petitioners assert that insufficient evidence supports the district court's conclusion concerning the relationship between the business entities that Gage represented in the 1999 litigation and the Vestin Funds. But the Vestin Funds' motion to disqualify Gage included Connaghan's affidavit, which states that Gage acquired confidential information while representing "the Vestin affiliates" during the 1999 litigation. Petitioners did not dispute the claim or provide a contrary affidavit.
NRAP 21(a) imposes upon a party seeking extraordinary relief the burden of providing "a statement of the facts necessary to an understanding of the issues presented by the application. . . and copies of any order or opinion or parts of the record which may be essential to an understanding of the matters set forth in the petition." We recently emphasized a petitioner's duties under this rule in Pan v. District Court,[13] in which we stated:
The reasons for NRAP 21(a)'s requirements are simple. A petition for writ relief invokes this court's original jurisdiction. Our review in a writ proceeding is limited to the argument and documents provided by the parties. If essential information is left out of the petition and accompanying documentation, we have no way of properly evaluating the petition. We routinely receive and deny writ petitions that fail to comply with NRAP 21(a). The time and energy expended reviewing these deficient petitions wastes this court's valuable and limited judicial resources.
Here, the only documentation before us concerning the scope of Gage's 1999 representation supports the district court's order. Connaghan's affidavit states that Gage represented not only Del Mar and Shustek, but also Sunderland and Capsource, and that Vestin Group and Vestin Mortgage are the successors to those entities. Also, the stipulation that resolved the 1999 litigation supports the Vestin Funds' assertions concerning the subject of the prior representation because it sets forth only terms concerning the return of Del Mar's assets and does not mention the alleged harassment of Del Mar's employees. Petitioners did not provide a copy of the 1999 complaint or any other documentation to support their claims concerning the prior case's subject matter or the scope of Gage's representation. Indeed, petitioners' opposition to the district court disqualification motion does not contain any affidavits supporting petitioners' contentions about the 1999 litigation. Under these circumstances, we are not persuaded that the district court abused its discretion in determining that the real parties in interest were former clients within the scope of SCR 159.
We conclude that petitioners have not demonstrated that the district court manifestly *1225 abused its discretion in disqualifying Gage and his firm and thus extraordinary relief is not warranted. Accordingly, we deny the petition.
NOTES
[1] The Honorable Ron Parraguirre, Justice, voluntarily recused himself from participation in the decision of this matter.
[2] In addition, if Gage is disqualified under SCR 159, then under SCR 160's imputed disqualification rule, the firm of Gage & Gage is likewise disqualified. This opinion does not separately analyze imputed disqualification under SCR 160, because the parties do not dispute that if Gage is disqualified, then so is his firm.
[3] Brown v. Dist. Ct., 116 Nev. 1200, 14 P.3d 1266 (2000); Robbins v. Gillock, 109 Nev. 1015, 862 P.2d 1195 (1993).
[4] Leibowitz v. Dist. Ct., 119 Nev. 523, 78 P.3d 515 (2003).
[5] See Robbins, 109 Nev. at 1017, 862 P.2d at 1197.
[6] Id. at 1018, 862 P.2d at 1197 (citations omitted).
[7] Id.; see also Hawkins v. 8th District Court, 67 Nev. 248, 216 P.2d 601 (1950); Boyd v. Second Judicial District Court, 51 Nev. 264, 274 P. 7 (1929); Coles v. Arizona Charlie's, 973 F.Supp. 971 (D.Nev.1997).
[8] See Westinghouse Elec. Corp. v. Gulf Oil Corp., 588 F.2d 221 (7th Cir.1978), cited in In re Carey, 89 S.W.3d 477 (Mo.2002); see also Schwartz v. Cortelloni, 177 Ill.2d 166, 226 Ill.Dec. 416, 685 N.E.2d 871 (1997) (citing LaSalle Nat. Bank v. County of Lake, 703 F.2d 252 (7th Cir.1983), for the same three-part test).
[9] Westinghouse, 588 F.2d at 225.
[10] Restatement (Third) of the Law Governing Lawyers § 131 cmt. b (2000); Boyd, 51 Nev. at 269-70, 274 P. at 8-9 (dismissing challenge to disqualification of lawyer who had worked for company with its former officer from representing the officer against the company); Bobbitt v. Victorian House, Inc., 545 F.Supp. 1124 (N.D.Ill.1982); BNYCP v. Superior Court (Parsons Corp.), 60 Cal.App.4th 248, 70 Cal.Rptr.2d 419 (1997); Jesse v. Danforth, 169 Wis.2d 229, 485 N.W.2d 63 (1992); cf. Palmer v. Pioneer Inn Assocs., Ltd., 118 Nev. 943, 59 P.3d 1237 (2002) (holding that SCR 182 prohibits attorney contact with certain employees of a represented company, those who are most likely to possess confidential information). We note that the primary concern in Palmer, protection of employees with confidential information, is different from the issue of whether an attorney-client relationship has been established between a company's lawyer and its affiliate, officer, director or employee.
[11] Restatement (Third) of the Law Governing Lawyers §§ 14 cmt. f, 131 cmt. b; Teradyne, Inc. v. Hewlett-Packard, 20 U.S.P.Q.2d (BNA) 1143, 1991 WL 239940 (N.D.Cal.1991) (disqualifying from opposing parent corporation in patent litigation (1) firm that represented wholly owned subsidiary and (2) firm that represented parent's pension and benefit plans, when parent exercised substantial control over matters handled by the firms) (not reported in F.Supp.); Baxter Diagnostics, Inc. v. AVL Scientific Corp., 798 F.Supp. 612 (C.D.Cal.1992) (disqualifying attorneys who had previously represented parent corporation from representing plaintiffs against subsidiary, when case involved challenge to validity of patent for which attorneys had generated opinions for parent); Gould, Inc. v. Mitsui Min. & Smelting Co., 738 F.Supp. 1121 (N.D.Ohio 1990) (holding that counsel for parent corporation had a conflict in action against defendant corporation because counsel also represented a subsidiary of defendant corporation); Arpadi v. First MSP Corp., 68 Ohio St.3d 453, 628 N.E.2d 1335 (1994) (holding that attorneys for limited partnership and its general partner owed duties to limited partners); Oswall v. Tekni-Plex, Inc., 299 N.J.Super. 658, 691 A.2d 889 (Ct.App.Div.1997) (disqualifying firm from representing company's former president in action by former employee against company because company's asserted defense was adverse to president); G.F. Industries v. American Brands, 245 N.J.Super. 8, 583 A.2d 765 (Ct.App.Div.1990) (disqualifying parent corporation's counsel that had performed extensive services for subsidiary from defending parent in action by subsidiary's buyer); cf. Dow Chemical Co. v. Mahlum, 114 Nev. 1468, 970 P.2d 98 (1998) (noting that Dow Corning attorneys were conflicted from representing parent Dow Chemical and that client's waiver of conflict had not been timely presented).
[12] NRS 49.105(1); U.S. v. Nabisco, Inc., 117 F.R.D. 40 (E.D.N.Y.1987); Oswall, 691 A.2d at 894-95.
[13] 120 Nev. 222, 229, 88 P.3d 840, 844 (2004) (citations omitted).