NEVADA YELLOW CAB CORPORATION; ROBERT D. VANNAH; AND VANNAH COSTELLO VANNAH & GANZ, PETITIONERS, v. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK, AND THE HONORABLE VALERIE ADAIR, DISTRICT JUDGE, RESPONDENTS, AND INSURANCE COMPANY OF THE WEST, REAL PARTY IN INTEREST.

No. 46579

March 8, 2007

152 P.3d 737

*Vannah & Vannah* and *Kristina R. Americo* and *Robert D. Vannah*, Las Vegas, for Petitioners.

*Phillips, Spallas & Angstadt, LLC*, and *John W. Kirk*, Las Vegas; *Hayes, Davis, Ellingson, McLay & Scott, LLP*, and *Steven Hayes, Robert McLay*, and *Cherie Sutherland*, Sacramento, California, for Real Party in Interest.

Before the Court EN BANC.[1]

## OPINION

*Per Curiam:*

This original petition for a writ of mandamus challenges a district court order disqualifying counsel for petitioner Nevada Yellow Cab Corporation in an insurance bad faith action against Insurance Company of the West (ICW). ICW had previously retained the firm Vannah Costello Canepa Riedy & Rubino (VCCRR) to represent its insureds in tort actions brought by third parties. In one such case, VCCRR was retained by ICW to represent Yellow Cab. VCCRR was subsequently replaced by new counsel, and the case settled in the middle of trial for more than double the policy limits, with Yellow Cab required to contribute a substantial amount toward the settlement.

Petitioner Robert Vannah was a VCCRR partner at the time that VCCRR represented Yellow Cab, although he did not personally work on the case. After ICW terminated VCCRR, the firm dissolved. Vannah and others formed a new firm, and an associate who had performed substantial work on Yellow Cab's representation in the tort action joined Vannah at his new firm.

---

[1]This matter was submitted for decision before January 1, 2007. Thus, only those justices remaining on the court who previously heard this matter participated in the decision. THE HONORABLE MICHAEL A. CHERRY, Justice, and THE HONORABLE NANCY M. SAITTA, Justice, did not participate.

Yellow Cab subsequently hired Vannah and his new firm, petitioner Vannah Costello Vannah & Ganz (VCVG),[2] to sue ICW for bad faith based on ICW's pretrial rejection of a policy-limits offer. ICW moved to disqualify Vannah and his new firm, and the district court granted its motion.

In concluding that writ relief is not warranted in this case, we expressly adopt the majority rule that counsel retained by an insurer to represent its insured represents both the insurer and the insured in the absence of a conflict. Thus, an attorney-client relationship existed between ICW and the associate who had previously defended Yellow Cab, who was now employed by Vannah's new firm. As the district court did not manifestly abuse its discretion in determining that disqualification was warranted, based upon this former representation, the substantial relationship between the two representations, and the adversity of Yellow Cab's and ICW's positions in the bad faith case, we deny this petition.

## FACTS

From 1998 to 2001, the law firm of Vannah Costello Canepa Riedy & Rubino (VCCRR) was one of the Southern Nevada firms retained by real party in interest Insurance Company of the West (ICW), primarily to defend its insureds in civil lawsuits filed by third parties. Almost all of VCCRR's work on these matters was performed by partner Michael Rubino and associate Denise Cooper Osmond. VCCRR also apparently represented ICW in two first-party matters, one an underinsured motorist coverage claim by an insured, handled by Rubino and Osmond, and one an uninsured motorist coverage claim that later generated a bad faith claim, handled only by Rubino. Notably, after the bad faith allegation was made in the latter case, ICW reassigned the case to new counsel.

In 1999, ICW retained VCCRR to defend its insured, Yellow Cab, in a personal injury lawsuit stemming from an accident between one of Yellow Cab's drivers and the plaintiff, Heather Nash. Yellow Cab had an ICW liability policy with limits of $500,000 and a self-insured reserve of $50,000. From January 1999 to November 2002, Rubino and Osmond defended Yellow Cab in the matter and regularly updated ICW on the litigation's status. Apparently, during this time period, the complaint and an answer were filed, the NRCP 16.1 conference was held, and some discovery, including document production and several depositions, occurred.

---

[2]When this petition was filed, Vannah's firm was called Vannah Costello Vannah & Ganz. While this petition was pending, Vannah's firm name changed to Vannah & Vannah. Since petitioners did not file a motion to substitute parties, however, see NRAP 43, we have not changed the caption.

In November 2002, without Yellow Cab's consent, ICW terminated VCCRR and retained a different law firm to assume Yellow Cab's representation. Shortly before trial, the plaintiff offered to settle for the policy limits; ICW instructed counsel to reject the offer. In March 2003, after the first few days of trial went poorly for Yellow Cab, the case settled for $1.3 million, $800,000 more than Yellow Cab's $500,000 policy limit. Yellow Cab was required to pay $500,000 toward the settlement.

In 2003, VCCRR split into two firms, Vannah Costello Vannah & Ganz (VCVG), and Canepa Riedy & Rubino; Vannah and Osmond stayed with the former firm, and Rubino went with the latter firm. Also, in June 2003, Yellow Cab retained Vannah to file a bad faith action against ICW based on the *Nash* lawsuit, particularly its failure to accept the plaintiff's policy-limits offer shortly before trial and its subsequent settlement for more than double the policy limits after trial commenced. Since the firm split, VCVG represents Yellow Cab on a regular basis in all of its legal matters.

After ICW retained counsel to defend the bad faith action, its counsel notified Vannah of a perceived conflict of interest. ICW's counsel asked Vannah to research the issue and requested that Vannah's firm withdraw. About a month later, ICW's counsel spoke with Vannah, who explained that he did not believe a conflict existed and that he would not withdraw unless ordered to do so.

Shortly thereafter, ICW and Yellow Cab discussed mediation and agreed in principle to the idea. In its correspondence on this matter, ICW reiterated its belief that a conflict existed and specifically stated that its consent to mediation did not waive its right to seek disqualification of Vannah's firm if mediation failed. Deciding on a mediator and scheduling took almost a year, and the mediation was not held until July 2005.

After the mediation failed, ICW filed the underlying motion to disqualify Vannah and VCVG. Yellow Cab, Vannah, and the firm opposed the motion. At the hearing, the district court judge concluded that the "potential conflict" was too great and granted the motion. This writ petition followed. An answer was ordered and has been timely filed, and oral argument was held.

## DISCUSSION

In deciding this petition, we first resolve the threshold issue of whether ICW waived any conflict by waiting until two years after the complaint was filed to seek disqualification. We then consider whether the district court appropriately determined that a conflict existed under the applicable ethical rule's three-part analysis: first, whether ICW is a former client; second, if so, whether the former representation of ICW is substantially related to VCVG's current

representation of Yellow Cab; and third, whether the two representations are adverse. Finally, we determine whether the district court manifestly abused its discretion in concluding that disqualification was warranted. Because ICW did not waive any conflict and the district court's disqualification decision was well within its discretion, we deny the petition in this case.

## Standard for writ relief

A writ of mandamus is available to compel the performance of an act that the law requires or to control an arbitrary or capricious exercise of discretion.[3] But mandamus is an extraordinary remedy, and a petition for a writ of mandamus is addressed to this court's sole discretion.[4] This court has consistently held that mandamus is the appropriate vehicle for challenging orders that disqualify counsel.[5] Accordingly, this writ petition is properly before us.

## Waiver

A threshold issue that must be addressed is whether ICW waived any conflict by waiting over two years into the litigation before filing its motion to disqualify counsel. Waiver requires the intentional relinquishment of a known right.[6] If intent is to be inferred from conduct, the conduct must clearly indicate the party's intention.[7] Thus, the waiver of a right may be inferred when a party engages in conduct so inconsistent with an intent to enforce the right as to induce a reasonable belief that the right has been relinquished.[8] However, delay alone is insufficient to establish a waiver.[9]

Here, ICW identified VCVG's potential conflict almost immediately and asked Vannah to withdraw. He refused. When ICW and Yellow Cab decided to try mediation, ICW postponed any motion for disqualification, while stating that it reserved its right to file such a motion if mediation failed. When mediation failed, ICW

---

[3]See NRS 34.160; *Round Hill Gen. Imp. Dist. v. Newman*, 97 Nev. 601, 637 P.2d 534 (1981).

[4]*Poulos v. District Court*, 98 Nev. 453, 455, 652 P.2d 1177, 1178 (1982).

[5]*Waid v. Dist. Ct.*, 121 Nev. 605, 119 P.3d 1219 (2005); *Cronin v. District Court*, 105 Nev. 635, 781 P.2d 1150 (1989).

[6]*Mahban v. MGM Grand Hotels*, 100 Nev. 593, 596, 691 P.2d 421, 423 (1984).

[7]*Host Int'l, Inc. v. Summa Corp.*, 94 Nev. 572, 583 P.2d 1080 (1978).

[8]*Hudson v. Horseshoe Club Operating Co.*, 112 Nev. 446, 457, 916 P.2d 786, 792 (1996).

[9]*Mackintosh v. California Fed. Sav.*, 113 Nev. 393, 403, 935 P.2d 1154, 1161 (1997).

promptly filed its motion. Thus, ICW's conduct does not demonstrate, as required for waiver, a clear intent to relinquish its right to challenge Vannah and his firm. The district court therefore properly determined that a waiver was not shown. Accordingly, we turn to the district court's disposition of ICW's disqualification motion.

*Existence of a conflict*

The issue of whether Vannah and his firm have a conflict of interest in representing Yellow Cab in the bad faith action is primarily resolved by our rules of professional conduct governing conflicts with former clients and imputed disqualification of law firms. At the time of the underlying proceedings, these rules were identified as SCR 159 and 160; following comprehensive amendments to the rules of professional conduct after this petition was filed, they are now Nevada Rules of Professional Conduct 1.9 and 1.10. For ease of reference, and since the former version of the rules apply to this case,[10] we use the older terminology.

Under SCR 159, which governs conflicts based on former representation, a lawyer may be disqualified from representing a client against a former client if the current representation is substantially related to the former representation. Thus, for a potentially disqualifying conflict to exist, the party seeking disqualification must establish three elements: (1) that it had an attorney-client relationship with the lawyer, (2) that the former matter and the current matter are substantially related, and (3) that the current representation is adverse to the party seeking disqualification. Under SCR 160, the disqualification of a lawyer practicing in a firm is generally imputed to other lawyers in the firm.

The parties do not dispute that the third element is satisfied—that Vannah's current representation of Yellow Cab in the bad faith action is adverse to ICW. Thus, the existence of a conflict turns on the first and second elements: whether ICW is a former client and whether the current and former representations are substantially related.

*Whether ICW is a former client*

With respect to the relationship between an insurer and counsel the insurer retains to defend its insured, the majority rule is that counsel represents both the insurer and the insured in the absence

---

[10]*See Nevada Pay TV v. District Court*, 102 Nev. 203, 205 n.2, 719 P.2d 797, 798 n.2 (1986).

of a conflict.[11] This rule requires that the primary client remains the insured, but counsel in this situation has duties to the insurer as well.[12] Courts adopting this rule note that, while the insured is the primary client, counsel generally learns confidential information from both the insured and the insurer and thus owes both of them a duty to maintain this confidentiality;[13] and, since counsel generally offers legal advice to both the insured and the insurer, counsel owes a duty of care to both.[14] Finally, as most states, including Nevada, have a rule that permits joint representation when no actual conflict is present,[15] courts that have adopted a dual-representation principle in insurance defense cases reason that joint representation is permissible as long as any conflict remains speculative.[16]

While we have not directly addressed this issue in our prior opinions, we have implicitly recognized that an attorney-client relationship exists between a medical malpractice insurer and the lawyer it retains to defend its insured doctor.[17] Also, in considering whether the insurer can assert an attorney-client or work product privilege for documents prepared during the representation of an insured, we have presumed that an attorney-client relationship exists between the insurer and counsel it retained for its insured.[18]

---

[11]*See Home Indem. Co. v. Lane Powell Moss and Miller*, 43 F.3d 1322, 1330-31 (9th Cir. 1995) (applying Alaska law); *State Farm v. Federal Ins. Co.*, 86 Cal. Rptr. 2d 20, 24 (Ct. App. 1999); *Unigard Ins. Group v. O'Flaherty & Belgum*, 45 Cal. Rptr. 2d 565, 568-69 (Ct. App. 1995); *Nandorf, Inc. v. CNA Ins. Companies*, 479 N.E.2d 988, 991 (Ill. App. Ct. 1985); *McCourt Co., Inc. v. FPC Properties, Inc.*, 434 N.E.2d 1234, 1235 (Mass. 1982); *Gray v. Commercial Union Ins. Co.*, 468 A.2d 721, 725 (N.J. Super. Ct. App. Div. 1983); *Spratley v. State Farm Mut. Auto. Ins. Co.*, 78 P.3d 603, 607 (Utah 2003).

[12]*See* cases cited *supra* note 11.

[13]*Gray*, 468 A.2d at 725.

[14]*See Home Indem. Co.*, 43 F.3d at 1330; *Unigard Ins. Group*, 45 Cal. Rptr. 2d at 568-69; *Nandorf*, 479 N.E.2d at 991.

[15]*See* RPC 1.7 (formerly SCR 157(2)) (permitting joint representations unless conflict is present); RPC 1.8(g) (formerly SCR 158(7)) (regulating settlement when multiple clients are represented).

[16]*See Home Indem. Co.*, 43 F.3d at 1330-31; *Unigard Ins. Group*, 45 Cal. Rptr. 2d at 568-69; *Nandorf*, 479 N.E.2d at 992; *McCourt*, 434 N.E.2d at 1235-36; *Gray*, 468 A.2d at 725.

[17]*Semenza v. Nevada Med. Liability Ins. Co.*, 104 Nev. 666, 765 P.2d 184 (1988) (permitting an insurer to sue a lawyer retained to defend its insured physician, although concluding that the legal malpractice action in that case was premature).

[18]*See C.S.A.A. v. District Court*, 106 Nev. 197, 788 P.2d 1367 (1990); *Ballard v. District Court*, 106 Nev. 83, 787 P.2d 406 (1990).

We now expressly adopt the majority rule concerning the relationship between an insurer and counsel retained by the insurer to defend its insured. In the absence of a conflict, counsel represents both the insured and the insurer. Thus, the first element in this matter's conflict analysis—requiring an attorney-client relationship—is met.

### *Substantial relationship between former and current matters*

Determining whether a conflict exists, then, depends upon whether the second element of the conflict analysis is met, that is, whether Vannah's prior representation of ICW is substantially related to the underlying bad faith case. In *Waid v. District Court*,[19] we recently adopted a three-part test to determine whether two representations are substantially related. A district court presented with a disqualification motion based on a former representation should

> (1) make a factual determination concerning the scope of the former representation, (2) evaluate whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters, and (3) determine whether that information is relevant to the issues raised in the present litigation.[20]

We noted in *Waid* that a superficial resemblance between the matters is not sufficient; ''rather, the focus is properly on the precise relationship between the present and former representation.''[21]

Yellow Cab, Vannah and VCVG contend that no substantial relationship exists between the current bad faith action and any prior representation of ICW because the *Nash* settlement was completely handled by another firm, after Vannah's former firm was terminated. The district court disagreed, and we conclude that it did not manifestly abuse its discretion in doing so.

With respect to the *Waid* test's first prong, concerning the scope of the prior representation, the documents before us support a finding that Vannah's former firm was responsible for defending the *Nash* litigation from its inception in January 1999 until November 2002, only four to five months before trial, and that associate Denise Osmond participated extensively in this representation. Considering the second prong, the district court could have reasonably inferred that Osmond obtained confidential information concerning ICW's handling of Nash's claim during this three-year

---

[19]121 Nev. 605, 119 P.3d 1219 (2005).

[20]*Id.* at 610, 119 P.3d at 1223.

[21]*Id.*

period. Finally, the way that ICW handled Nash's claim against Yellow Cab is the precise subject of the underlying litigation. Thus, the district court did not abuse its discretion in concluding that the two matters are substantially related, that Osmond has a conflict under SCR 159, and that this conflict is imputed under SCR 160 to Vannah and the rest of the firm, VCVG.[22]

*Whether disqualification was warranted*

We have previously recognized that a district court must undertake a balancing test in determining whether disqualification is warranted in a particular situation and should weigh the prejudices that the parties will suffer based on the district court's decision, consider the public interest in the administration of justice, and discourage the use of such motions for purposes of harassment and delay:

> Courts deciding attorney disqualification motions are faced with the delicate and sometimes difficult task of balancing competing interests: the individual right to be represented by counsel of one's choice, each party's right to be free from the risk of even inadvertent disclosure of confidential information, and the public's interest in the scrupulous administration of justice. While doubts should generally be resolved in favor of disqualification, parties should not be allowed to misuse motions for disqualification as instruments of harassment or delay.[23]

One purpose of disqualification is to prevent disclosure of confidential information that could be used to a former client's disadvantage.[24] Here, ICW perceived a conflict almost immediately after the complaint was filed, but then it waited two years to seek disqualification, thus providing ample opportunity for disclosure of the information it ostensibly sought to protect. ICW's apparent acquiescence in VCVG's representation of Yellow Cab for two years, with no protection for its assertedly confidential information, arguably detracts from its current insistence that this information be held inviolate.

---

[22]We therefore need not consider whether any of the other matters handled for ICW by Vannah's former firm are substantially related to the current action.

[23]*Brown v. Dist. Ct.*, 116 Nev. 1200, 1205, 14 P.3d 1266, 1269-70 (2000) (citations omitted).

[24]*Ciaffone v. District Court*, 113 Nev. 1165, 1169, 945 P.2d 950, 953 (1997), *overruled on other grounds by Leibowitz v. Dist. Ct.*, 119 Nev. 523, 78 P.3d 515 (2003).

But the district court is more familiar with this case than we are, and it had the best opportunity to evaluate whether disqualification was warranted. We have repeatedly pointed out that a district court's discretion in such matters is broad and that its decision will not be set aside absent a manifest abuse of that discretion.[25] We are not persuaded that the district court manifestly abused its broad discretion in disqualifying Vannah and his firm in this case, and thus, we deny the petition.[26]

## CONCLUSION

Having considered the petition, the answer, the documentation submitted by the parties, and the oral argument held in this matter, we are not persuaded that the district court manifestly abused its discretion in disqualifying Vannah and his firm.[27] Accordingly, we deny the petition.[28]

MAUPIN, C. J., concurring:

This is indeed a close case. As noted by the majority, Insurance Company of the West (ICW) waited two years after appreciating the perceived conflict before formally seeking disqualification. One can understand the firm's intransigence in refusing to voluntarily withdraw based upon a good faith belief that it held no confidential information that could compromise ICW's defense in the bad faith litigation. But, because the issue is close, and because the district court could reasonably conclude that ICW's former insurance defense counsel gained some knowledge generally about ICW's internal claims policies, I cannot conclude that the district court manifestly abused its discretion in its ruling of disqualification.

---

[25]*Waid*, 121 Nev. at 609, 613, 119 P.3d at 1222, 1225.

[26]Our prior cases have not been completely consistent in applying the mandamus standard of manifest abuse of discretion to our consideration of disqualification orders. To the extent that these cases required simply an abuse of discretion to warrant writ relief, they are disavowed. *See Cronin*, 105 Nev. at 640, 781 P.2d at 1153; *Boyd v. Second Judicial District Court*, 51 Nev. 264, 270, 274 P. 7, 9 (1929).

[27]*See Waid*, 121 Nev. at 609, 119 P.3d at 1222.

[28]*See Smith v. District Court*, 107 Nev. 674, 818 P.2d 849 (1991).