140 Nev., Advance Opinion 49

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

| | |
|---|---|
| ERIKA KRAGEN,<br>Petitioner,<br>vs.<br>THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE PAUL M. GAUDET, DISTRICT JUDGE,<br>Respondents,<br>  and<br>MICHAEL KRAGEN,<br>Real Party in Interest. | No. 88187-COA<br><br>FILED<br><br>AUG 15 2024<br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY_____<br>CHIEF DEPUTY CLERK |

Original petition for a writ of mandamus or prohibition challenging a district court order in a divorce action assuming jurisdiction over child custody issues.

*Petition denied.*

Onello Law Group, PLLC, and Jason W. Onello, Las Vegas,
for Petitioner.

McFarling Law Group and Emily M. McFarling, Las Vegas,
for Real Party in Interest.

_____

BEFORE THE COURT OF APPEALS, GIBBONS, C.J., and BULLA and WESTBROOK, JJ.

24-28934

*OPINION*

By the Court, WESTBROOK, J.:

Petitioner Erika Kragen contends that the district court improperly assumed jurisdiction over child custody determinations concerning the minor children she shares with real party in interest Michael Kragen. Erika posits that Nevada is not the children's "home state" for purposes of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) because she physically removed the children from Nevada just four days short of the six-month residency period set forth in NRS 125A.085(1). Michael contends that Erika's actions in removing the children effected a "temporary absence" that did not interrupt their Nevada residency until he filed for divorce a few weeks later. As a result, he argues that the district court properly exercised home state jurisdiction over custody matters in this case.

Although the UCCJEA does not define the phrase "temporary absence," most UCCJEA states apply a totality of the circumstances test when determining if an absence is temporary. Today we formally adopt this approach and hold that, under the totality of the circumstances, the district court properly found that Nevada has home state jurisdiction notwithstanding the children's temporary absence from the state. We therefore deny Erika's petition.

*PROCEDURAL AND FACTUAL HISTORY*

Erika and Michael were married in 2016 in San Diego, California, and have three minor children together. On August 4, 2022, they relocated from San Diego to Henderson, Nevada, where they lived with Michael's parents. They subsequently enrolled their children in a private school where Erika took a job as a teacher's aide.

COURT OF APPEALS
OF
NEVADA

(O) 1947B

On or about January 12, 2023, Erika indicated that she wanted a trial separation from Michael. In response, Michael allegedly began crying, grabbed a kitchen knife, pointed it at himself, and threatened suicide. When Erika attempted to calm him down, Michael walked outside alone with the knife. Then, according to Erika, Michael stabbed the knife through the netting of their children's trampoline, while Michael claimed he threw the knife to the ground, inadvertently slicing the trampoline. Erika did not call the police, nor did she seek a protective order at that time.

More than a week later, on January 21, Erika took the children to San Diego to visit her family for a week during a school break. They returned to Henderson on January 29. Two days later, on January 31, while Michael was still at work and unbeknownst to him, Erika again took the children and drove back to stay with her family in San Diego. Only after their departure did Erika notify Michael by text that they had left for San Diego, that he was "welcome to call or visit," and that they "need[ed] a divorce." Michael stayed behind in Nevada.

The parties agree that January 31 was the last day the children were physically present in Nevada. Nevertheless, for several weeks after their departure, the children remained enrolled in their Nevada school, and Erika was still employed by the school. Erika and Michael also began attending marriage counseling.

Towards the end of February, Erika stopped communicating with Michael and withdrew the children from their school. On February 26, after speaking with Erika over the phone, Michael realized their relationship was over. That same day, he filed a complaint for divorce in

Clark County, Nevada. Two days later, on February 28, Erika petitioned for legal separation in San Diego County, California.[1]

Erika was served with Michael's Nevada complaint on March 9 and filed an answer. More than two weeks later, on March 28, Erika applied for an emergency domestic violence restraining order in California, citing the January knife incident and prior alleged physical and emotional abuse. On April 4, while Erika's restraining order request was pending in California, the Nevada district court orally announced a temporary custody arrangement providing that the parties would share joint legal and physical custody of their children. This temporary order was reduced to writing on April 20. Meanwhile, on April 18, the California court granted Erika's request for the emergency domestic violence restraining order and also issued its own temporary custody order awarding Erika sole legal custody and joint physical custody, with Michael permitted two monitored visits per week.[2]

The Nevada district court then held a telephonic conference with the California court to address the competing temporary custody orders and discuss which state had jurisdiction over the parties' children. Both courts acknowledged that Nevada had jurisdiction over the parties'

[1]In her petition, Erika wrote that the children lived in Henderson, Nevada, from August 1, 2022, to January 31, 2023.

[2]Although this arrangement would likely not constitute joint physical custody under Nevada law, *see Rivero v. Rivero*, 125 Nev. 410, 417, 216 P.3d 213, 219 (2009) (defining joint physical custody generally as a parenting time arrangement where each party has physical custody at least 40 percent of the time), *overruled on other grounds by Romano v. Romano*, 138 Nev. 1, 3, 501 P.3d 980, 982 (2022), the California court's custody order was issued on a form with a checked box indicating "joint" physical custody.

divorce and the division of marital assets; they further recognized that the children had resided in Nevada for close to the six months necessary to establish Nevada's home state jurisdiction under the UCCJEA. The California court ultimately agreed to "defer" to the Nevada court's decision on the issue of child custody jurisdiction.

Following the telephonic conference, the Nevada district court entered an order finding that it had home state jurisdiction over the parties' children. The court determined that the children had resided in Nevada for six consecutive months—between August 1, 2022, and January 31, 2023—relying on Erika's statement in her California petition for legal separation. Erika petitioned this court for a writ of mandamus or prohibition, arguing that the district court abused its discretion by relying on the August 1 date when the record contained evidence that they arrived in Nevada on a later date. Noting that the district court had "conflicting evidence of the parties' time in Nevada," this court granted Erika's petition and vacated the district court's order with instructions to hold an evidentiary hearing and to reconsider the jurisdictional issue. *Kragen v. Eighth Jud. Dist. Ct.*, No. 86626-COA, 2023 WL 7141048, at *4 (Nev. Ct. App. Oct. 30, 2023) (Order Granting Petition for Writ of Mandamus).

Thereafter, the Nevada court held an evidentiary hearing to determine whether Nevada or California had home state jurisdiction. At the hearing, both parties agreed that the children arrived in Nevada on August 4. However, the parties disputed whether the children's absence from Nevada after January 31 was temporary or permanent.

Erika took the position that the children's state of residence changed on January 31, testifying that the reason she moved back to San Diego was "[b]ecause there was domestic violence." Erika further testified

that she had not intended to return to Nevada but acknowledged that she and Michael began attending marriage counseling thereafter.

Michael testified that when Erika left with the children, he believed they were coming back to Nevada for several reasons. Specifically, the children were still enrolled in their Nevada school, and they had initially moved to Nevada to attend that school; Erika was still employed at their children's school as a teacher's aide; he and Erika began marriage counseling, causing him to "expect things to go back to normal"; and Erika did not lay down roots upon her arrival in San Diego. During closing argument, Michael asserted that until the end of February, he believed the children's absence from Nevada was temporary.

The district court entered an order finding that Nevada had home state jurisdiction over the parties' children. The court recounted Erika's stated reason for leaving Nevada due to domestic violence, as well as Michael's reasons why he believed the children would return, and the district court found Michael "to be more credible than [Erika] in relation to stated intent pertaining to relocation to San Diego." The court determined that Erika's testimony about the reason for her departure was not credible because she did not pursue a restraining order in California until well after she was served with Michael's complaint for divorce.[3]

The district court also found that Erika's decision to remove the children without notice or permission from Michael was "unjustifiable conduct" that was intended to defeat Nevada's home state jurisdiction. The court noted that the statutory definition of "home state" included "any

---

[3]The court advised the parties it was not deciding whether domestic violence had, in fact, occurred; rather, that issue would be determined at a subsequent hearing when the court addressed the children's custody status.

temporary absence from the state" and that permitting Erika "to circumvent this definition . . . by unilaterally departing that [s]tate with the children, while giving the expectation of return through participation in therapy and continued enrollment of the children in school would be grossly unfair." As such, the court effectively concluded that the children's time in San Diego from January 31 to February 26 constituted a temporary absence that did not interrupt their Nevada residency. Including this time period, the court determined that the children's residency exceeded the six consecutive months required to establish Nevada's home state jurisdiction under the UCCJEA. Erika then filed the instant petition for a writ of mandamus or prohibition challenging the district court's exercise of home state jurisdiction in this case.

*ANALYSIS*

*We elect to entertain the writ petition*

A writ of mandamus is appropriate to "compel the performance of an act that the law requires or to control an arbitrary or capricious exercise of discretion." *Nev. Yellow Cab Corp. v. Eighth Jud. Dist. Ct.*, 123 Nev. 44, 49, 152 P.3d 737, 740 (2007). Alternatively, a writ of prohibition may issue to "arrest[ ] the proceedings of any tribunal . . . when such proceedings are without or in excess of the jurisdiction of such tribunal." NRS 34.320. Writs of mandamus and prohibition are proper vehicles to control a district court's alleged unauthorized exercise of jurisdiction during child custody proceedings. *See Friedman v. Eighth Jud. Dist. Ct.*, 127 Nev. 842, 854, 264 P.3d 1161, 1169 (2011) ("And, while discretionary, issuing writs [of prohibition and mandamus] to ensure that courts comply with the subject matter jurisdiction laws embodied by the UCCJEA is proper."). This court may also exercise its discretion to consider a writ petition when "an

important issue of law needs clarification." *Int'l Game Tech., Inc. v. Second Jud. Dist. Ct.*, 124 Nev. 193, 197, 179 P.3d 556, 559 (2008).

Erika contends that the district court lacks jurisdiction over child custody matters in this case. She argues that California, rather than Nevada, has home state jurisdiction because the children only lived in Nevada from August 4 until their departure on January 31—less than six consecutive months. *Cf.* NRS 125A.085(1). Michael responds that the district court properly exercised jurisdiction because the children's absence from Nevada between January 31 and February 26 was temporary, such that they resided in Nevada from August 4 to February 26—more than six consecutive months. We elect to entertain Erika's extraordinary writ petition to clarify an important and unsettled issue of law: how Nevada's district courts should evaluate whether a child's absence from the state is "temporary" under the UCCJEA. In doing so, we conclude that the district court properly assumed home state jurisdiction.

*The district court correctly found that Nevada has home state jurisdiction*

Subject matter jurisdiction over child custody issues is governed by the UCCJEA. NRS 125A.305. The UCCJEA elevates the "home state" to principal importance in child custody determinations. *Id.*; *Ogawa v. Ogawa*, 125 Nev. 660, 668, 221 P.3d 699, 704 (2009). "Home state" is defined as "[t]he state in which a child lived with a parent . . . for at least 6 consecutive months, *including any temporary absence from the state,* immediately before the commencement of a child custody proceeding." NRS 125A.085(1) (emphasis added). "Thus, the definition 'permits a period of temporary absence during the six-month time frame necessary to establish home-state residency.'" *Ogawa*, 125 Nev. at 668, 221 P.3d at 704 (quoting *Felty v. Felty*, 882 N.Y.S.2d 504, 508 (App. Div. 2009)). If Nevada either is the child's home state on the date that custody proceedings commence, or if

Nevada was the child's home state within six months before the proceedings commenced and the child is absent from the state but a parent continues to live in Nevada, then Nevada courts have jurisdictional priority to make initial child custody determinations. NRS 125A.305(1)(a).

Subject matter jurisdiction, including home state jurisdiction under the UCCJEA, is a question of law subject to de novo review. *Ogawa*, 125 Nev. at 667, 221 P.3d at 704. "Although de novo, our review properly includes decisions from other UCCJEA states so as to harmonize our law with theirs." *Friedman*, 127 Nev. at 847, 264 P.3d at 1165 (citing NRS 125A.605). The district court's factual findings are given deference and will be upheld so long as "they are supported by substantial evidence, which is evidence that a reasonable person may accept as adequate to sustain a judgment." *Ellis v. Carucci*, 123 Nev. 145, 149, 161 P.3d 239, 242 (2007) (footnote omitted).

Neither the UCCJEA nor other Nevada statutes define "temporary absence," and there is no single uniform test or definition that all UCCJEA states apply when evaluating whether an absence is temporary for purposes of determining home state jurisdiction. However, in *Antonetti v. Westerhausen*, the Arizona Court of Appeals examined how other jurisdictions evaluate whether an absence is "temporary" and found that states generally use one of three tests: (1) the duration test, (2) the intent test, or (3) the totality of the circumstances test. 523 P.3d 969, 973-74 (Ariz. Ct. App. 2023).

The duration test "focuses strictly on the length of the child's absence," and shorter absences are more likely to be considered temporary than longer ones. *Id.* at 974. However, this test fails to account for either longer absences intended to be temporary or shorter absences that later

become permanent. *See, e.g., Ogawa*, 125 Nev. at 663, 221 P.3d at 701 (noting that the children left Nevada for a temporary three-month vacation before the children's father refused to return them). The intent test, on the other hand, "requires courts to consider the parents' purpose for an absence to determine whether it should be deemed temporary." *Antonetti*, 523 P.3d at 974. One drawback to this approach is "the general difficulty of divining parties' intent," which may change over time. *Id.* Further, the parties' intentions may be conflicting or disputed, as they were in this case.

The last approach is the totality of the circumstances test. "As the name indicates, the test looks at all the surrounding circumstances of a purported temporary absence, including intent of the parties and duration of the absence, to assess whether the absence should be treated as a temporary departure from a putative home state." *In re Marriage of Schwartz & Battini*, 410 P.3d 319, 325 (Or. Ct. App. 2017). Other relevant considerations may include a parent's wrongful withholding of a child, *see Ogawa*, 125 Nev. at 668, 221 P.3d at 704; "under what circumstances the child came to and remained in the state," *In re Marriage of Richardson & Richardson*, 625 N.E.2d 1122, 1124 (Ill. App. Ct. 1993); and when the nonmoving parent "had reason to recognize that the child's relocation was permanent," *Antonetti*, 523 P.3d at 975.

The totality of the circumstances test is the most commonly used approach among other jurisdictions that adopted the UCCJEA. *Antonetti*, 523 P.3d at 974. Having considered the various approaches, we too adopt the totality of the circumstances test, which offers the greatest flexibility for the district courts to consider a wide array of relevant factors. *See* NRS 125A.605; *see also Kemp v. Turqueza*, No. 86347, 2024 WL 396207, at *3 (Nev. Jan. 31, 2024) (Order of Affirmance) (affirming the district

court's application of the totality of the circumstances test to evaluate whether a child's absence from their home country was temporary).

In this case, although the district court did not expressly reference the "totality of the circumstances" test in its decision and order, the court nonetheless addressed the pertinent factors to conclude that Nevada was the children's home state notwithstanding their temporary absence from January 31 to February 26. Further, the court's findings were supported by substantial evidence in the record and reflect its credibility determinations, which we do not reweigh on appeal. *See Ellis*, 123 Nev. at 152, 161 P.3d at 244 ("[W]e leave witness credibility determinations to the district court and will not reweigh credibility on appeal.").

First, the district court addressed the parties' intent. *See Antonetti*, 523 P.3d at 974. The court considered Erika's testimony that she left Nevada because of domestic violence, as well as Michael's testimony that he believed Erika would return with the children, and concluded that Michael was "more credible" than Erika when it came to the parties' intentions. Although a moving parent's relocation is generally not weighed against them when the move is to protect the parent or child from domestic violence, *see Felty*, 882 N.Y.S.2d at 509, the court expressly found that Erika did not remove the children from Nevada to protect them from domestic violence, but rather did so to defeat home state jurisdiction. The district court reasoned that Erika could have timely sought a protection order in Nevada if she feared for her safety; but instead, she waited until after Michael filed for divorce to apply for a restraining order in California.

The district court also noted that Erika did not inform Michael beforehand that she was taking their children to San Diego, nor did she obtain his permission to leave with the children. *See Ogawa*, 125 Nev. at

668-69, 221 P.3d at 704-05 (affirming the district court's decision that the time from one parent's wrongful withholding of the children to the point when the other parent filed an emergency motion for the children's return was a temporary absence). The court further took into account Erika's participation in therapy with Michael during the month of February, which gave rise to an expectation that she and the children would return to Nevada.

Next, the district court considered the duration of the children's absence from Nevada and the timing of their departure. *See Antonetti*, 523 P.3d at 974. In this regard, the court specifically recognized that, up to the point that Erika unilaterally removed the children, they had resided in Nevada for just four days less than six consecutive months. Thus, the timing of the children's removal further supported the district court's conclusion that Erika's intent in leaving was to defeat home state jurisdiction and not to escape domestic violence.[4]

---

[4]Erika argues that the district court erred in referencing her "unjustifiable conduct" in removing the children from Nevada without notice or permission to find that Nevada was the children's home state under NRS 125A.375(1). While the plain language of NRS 125A.375(1) permits a court to *decline* jurisdiction in certain circumstances based on a parent's unjustifiable conduct, this statute does not establish grounds for a court to *assert* jurisdiction. To the extent the district court relied on this statute as an independent basis to assert jurisdiction, this was error. Nevertheless, because the totality of the circumstances supports the district court's finding that Nevada was the children's home state as defined in NRS 125A.085(1), we conclude that any error by the district court in referencing "unjustifiable conduct" was harmless. *See Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. 592, 599, 245 P.3d 1198, 1202 (2010) (noting this court will affirm a district court's order if the right result is reached, albeit for the wrong reason).

Finally, the district court evaluated the reasons why the children came to and remained in Nevada, *see In re Marriage of Richardson*, 625 N.E.2d at 1124, crediting Michael's testimony that the children's private school in Nevada was superior to the one they attended in San Diego. The court acknowledged that until the end of February, the children were still enrolled in their Nevada school, and it found that the children's continued enrollment gave the expectation they would return to Nevada.

In this case, substantial evidence in the record supports the district court's finding that Nevada was the children's home state, notwithstanding the children's temporary absence from January 31 to February 26. *See Ogawa*, 125 Nev. at 668, 221 P.3d at 704 (noting that "testimony and other evidence in the record substantially supports the district court's finding" that the children's absence was intended to be temporary). Therefore, the children effectively resided in Nevada from August 4, 2022, until February 26, 2023—a period of 206 days, or 6 months and 22 days. Because the children resided here for more than six consecutive months, Nevada was the children's home state on the day that proceedings commenced, and Nevada has jurisdiction over the child custody issues in this case.[5] NRS 125A.305(1)(a).

---

[5]Erika further argues that this case should be reassigned to a different judge on remand. Judges are presumed to be impartial, and the burden is on the party asserting bias to show otherwise. *See Ybarra v. State*, 127 Nev. 47, 51, 247 P.3d 269, 272 (2011); *see also Roe v. Roe*, 139 Nev., Adv. Op. 21, 535 P.3d 274, 291 (Ct. App. 2023). We conclude that Erika failed to establish that the judge was biased or that reassignment is necessary. Insofar as Erika raised other issues not specifically addressed in this opinion, we have considered the same and conclude that they either do not present a basis for relief or need not be reached given the disposition of this appeal.

## *CONCLUSION*

District courts should consider all relevant information under the totality of the circumstances when evaluating whether a child's absence from a state is temporary for purposes of determining home state jurisdiction under the UCCJEA. In this case, the district court considered the parties' intent, the duration of the children's absence, and several other pertinent factors to find that Erika's removal of the children from Nevada did not defeat home state jurisdiction. This finding is supported by substantial evidence in the record, and so we conclude that the district court correctly assumed home state jurisdiction over the child custody issues. Accordingly, we deny Erika's writ petition.

_____ , J.
Westbrook

We concur:

_____ , C.J.
Gibbons

_____ , J.
Bulla