·2015·ND 282

In the Matter of the Application for DISCIPLINARY ACTION AGAINST DeWayne Alan JOHNSTON, a Member of the Bar of the State of North Dakota.

Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner

v.

DeWayne Alan Johnston, Respondent.

No. 20150048.

Supreme Court of North Dakota.

Dec. 1, 2015.

Rehearing Denied Jan. 14, 2016.

Brent J. Edison (argued), Fargo, N.D., for petitioner.

Kara J. Johnson, Disciplinary Counsel, Bismarck, N.D., for petitioner.

DeWayne A. Johnston (argued) and Jacey L. Johnston (appeared), Grand Forks, N.D., for respondent.

REPRIMAND ORDERED

PER CURIAM.

[¶ 1] Attorney DeWayne A. Johnston objects to a report of a hearing panel of the Disciplinary Board recommending that he be reprimanded, that he refund certain amounts billed to a client, that he complete six hours of continuing legal education, and that he pay the costs and expenses of the disciplinary proceeding in the amount of $8,285.61. We conclude clear and convincing evidence establishes Johnston violated N.D.R. Prof. Conduct 5.3, responsibilities regarding nonlawyer assistants. We order Johnston be reprimanded, complete six hours of Continuing Legal Education on conflicts of interest in addition to the mandatory requirements, and pay partial costs and expenses for the disciplinary proceeding of $5,523.74.

I

[¶ 2] DeWayne Johnston has been licensed as a lawyer in North Dakota since September 2000. In 2008, Darrin West retained Johnston and his law firm to recover West's $15,000 investment in a business partnership with Corey Hanson and Stacey Hanson. In August 2008, Johnston sued the Hansons on behalf of West. In March 2009, however, the lawsuit was stayed after the Hansons filed for bankruptcy in Minnesota. The Hansons employed attorney Richard Farroh to file their bankruptcy and listed the debt owed to West as an item of debt to discharge. At the time, Farroh employed Todd Chrzanowski as a paralegal. Chrzanowski was admitted to the bar in Minnesota in 1999, but was not licensed to practice law in Minnesota when he assisted Farroh as a paralegal. Chrzanowski has never been licensed to practice law in North Dakota.

[¶ 3] In June 2009, Johnston began an adversary proceeding in the bankruptcy court on West's behalf, seeking an order that the Hansons' debt to West was nondischargeable. In August 2010, the bankruptcy court ruled the Hansons' debt to West was excepted from a general discharge. In October 2010, the bankruptcy court ordered costs be inserted into the judgment in the August 2010 proceeding. In 2011, Johnston initiated a second lawsuit in the state court on West's behalf against Corey Hanson, seeking to collect the debt.

[¶ 4] In January 2011, the Johnston Law Office hired Chrzanowski as a paralegal. Johnston made no effort to screen Chrzanowski from the West matter, despite his prior work on the Hansons' behalf as attorney Farroh's paralegal. Rather, Chrzanowski worked directly on West's case against Hanson, serving as a primary contact with West, meeting and exchanging emails with West, discussing litigation strategy, and drafting pleadings that were subsequently signed by Johnston.

[¶ 5] Johnston ultimately secured a judgment in West's favor for more than $40,000. The Johnston law office had billed West over $24,000, which was paid by West's father. Despite Johnston's collection efforts, West did not recover any portion of the $15,000 investment from Hanson. Evidence introduced at the hearing showed Hanson was on housing assistance, fuel assistance, and Medicaid and had qualified for the earned income credit for tax years 2007 through 2009. Chrzanowski left the Johnston law firm in December 2012. Johnston's law firm continued limited work on West's collection efforts until approximately August 2013.

[¶ 6] In May 2014, a petition for discipline was brought against Johnston alleging violations of N.D.R. Prof. Conduct 1.5(a), fees; N.D.R. Prof. Conduct 1.7(a) and (c), conflict of interest: general rule; N.D.R. Prof. Conduct 1.9, duties to former

client; N.D.R. Prof. Conduct 5.3(a), (b), and (c), responsibilities regarding nonlawyer assistants; and N.D.R. Prof. Conduct 5.5(a), (d), and (e), unauthorized practice of law. Johnston denied the allegations. In October 2014, a hearing was held before a hearing panel of the Disciplinary Board. The hearing panel ruled Johnston had violated the professional conduct rules alleged and issued findings of fact, conclusions of law, and recommendations for discipline. Johnston filed objections to the hearing panel's report.

[¶ 7] The hearing panel had jurisdiction under N.D.R. Lawyer Discipl. 3.1(E). Johnston filed timely objections to the hearing panel's report under N.D.R. Lawyer Discipl. 3.1(F). This Court has jurisdiction under N.D. Const. art. VI, § 3, N.D.C.C. § 27–14–01, and N.D.R. Lawyer Discipl. 3.1(F).

## II

■ [¶ 8] Our standard for reviewing disciplinary proceedings is well-established:

> We review disciplinary proceedings de novo on the record. Disciplinary counsel must prove each alleged violation by clear and convincing evidence, which means the trier of fact must be reasonably satisfied with the facts the evidence tends to prove and thus be led to a firm belief or conviction. We give the Disciplinary Board's findings, conclusions, and recommendations due weight, but we do not act as a mere rubber stamp. We consider each disciplinary matter on its own facts to decide which sanction, if any, is appropriate.

*In re Disciplinary Action Against Hoffman*, 2013 ND 137, ¶ 5, 834 N.W.2d 636 (quoting *In re Disciplinary Action Against Hann*, 2012 ND 160, ¶ 14, 819 N.W.2d 498). This Court accords special deference to the hearing panel's findings on matters of conflicting evidence and witness credibility because the panel has the opportunity to hear witnesses and observe their demeanor. *See In re Disciplinary Action Against Askew*, 2010 ND 7, ¶ 9, 776 N.W.2d 816.

## III

[¶ 9] The hearing panel found Johnston violated N.D.R. Prof. Conduct 5.3(a), (b), and (c) by failing to adequately supervise paralegal Chrzanowski when Johnston failed to screen Chrzanowski from Johnston's litigation on behalf of West involving the same or a substantially related matter in violation of N.D.R. Prof. Conduct 1.7(a) and (c), and 1.9; and when Johnston purportedly held Chrzanowski out as a lawyer and turned West's legal matter over to Chrzanowski in violation of N.D.R. Prof. Conduct 5.5(a) and (d). The hearing panel also found Johnston violated N.D.R. Prof. Conduct 1.5(a) by charging an unreasonable fee in the unsuccessful attempt to recover the client's investment from an insolvent individual. Johnston objected and raises three main issues to this Court in response to the Board's recommendations.

### A

■ [¶ 10] The hearing panel found, and disciplinary counsel contends, Johnston failed to screen Chrzanowski from involvement in litigation involving the same or a substantially related matter and, essentially, allowed Chrzanowski to "switch sides," in violation of N.D.R. Prof. Conduct 1.7(a) and (c), 1.9, and 5.3(a), (b), and (c).

[¶ 11] Rule 5.3, N.D.R. Prof. Conduct, addressing a lawyer's responsibilities regarding nonlawyer assistants, states:

> With respect to a nonlawyer employed or retained by or associated with a lawyer:

(a) a partner, and a lawyer who individually or together with other lawyers has comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures *giving reasonable assurance that the nonlawyer's conduct is compatible with the professional obligations of the lawyer;*

(b) the lawyer having direct supervisory authority over the nonlawyer *shall make reasonable efforts to ensure that the nonlawyer's conduct is compatible with the professional obligations of the lawyer;* and

(c) a lawyer shall be responsible for conduct of a nonlawyer that would be a violation of these Rules if:

(1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer is a partner or has comparable managerial authority in the law firm in which the nonlawyer is employed, or has direct supervisory authority over the nonlawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated, but fails to take reasonable action.

(d) In addition to paragraphs (a), (b) and (c), the following apply with respect to a legal assistant employed or retained by or associated with a lawyer:

(1) A lawyer may delegate to a legal assistant any task normally performed by the lawyer except those tasks proscribed to one not licensed as a lawyer by statute, court rule, administrative rule or regulation, controlling authority, or these Rules.

(2) A lawyer may not delegate to a legal assistant:

(i) responsibility for establishing a lawyer-client relationship;

(ii) responsibility for establishing the amount of a fee to be charged for a legal service;

(iii) responsibility for a legal opinion rendered to a client; or

(iv) responsibility for the work product.

(3) The lawyer shall make reasonable efforts to ensure that clients, courts, and other lawyers are aware that a legal assistant is not licensed to practice law.

(Emphasis added.) Comments 1 and 2 to N.D.R. Prof. Conduct 5.3 further explain:

Lawyers generally employ nonlawyers in their practice, including secretaries, legal assistants, investigators, law student interns, and paraprofessionals. These individuals, whether employees or independent contractors, act for the lawyer in rendition of the lawyer's professional services. A lawyer must give such nonlawyers appropriate instruction and supervision concerning the ethical aspects of their employment, particularly regarding the obligation not to disclose information relating to representation of the client, and is responsible for their work product. The measures employed in supervising nonlawyers should take account of the fact that they do not have legal training and are not subject to professional discipline.

Paragraph (a) requires lawyers with managerial authority within a law firm to make reasonable efforts to establish internal policies and procedures designed to provide reasonable assurance that nonlawyers in the firm will act in a way compatible with these Rules. *See* Comment to Rule 5.1. Paragraph (b) applies to lawyers who have supervisory authority over the work of a nonlawyer.

Paragraph (c) specifies the circumstances in which a lawyer is responsible for conduct of a nonlawyer that would be a violation of these Rules if engaged in by a lawyer.

[¶ 12] Johnston argues the hearing panel erred by finding a conflict of interest prohibited his paralegal from working on the client's file. Johnston contends violations of N.D.R. Prof. Conduct 5.3(a), (b), and (c) were based on a purported violation of Rule 1.9 when Johnston allowed Chrzanowski to conduct work on West's file after being employed by the Johnston Law Office. Johnston contends the hearing panel erred in finding violations of N.D.R. Prof. Conduct 1.7, 1.9, and 5.3, because the record only "offer[s] up ... conjecture."

[¶ 13] This case involves a lawyer's ethical obligations when the lawyer hires a paralegal who previously had worked for an opposing counsel on the other side of a matter in litigation at the firm. When a nonlawyer changes firms to work for opposing counsel, a question arises as to how to protect client confidences, avoid impropriety, and maintain public confidence in the adversarial system's integrity. *See Hodge v. URFA–Sexton, LP*, 295 Ga. 136, 758 S.E.2d 314, 319 (2014).

[¶ 14] In *Hodge*, the Georgia Supreme Court discussed the split of authority among the courts on this issue:

> Under [the minority] approach, [which treats nonlawyers the same way as lawyers,] when a nonlawyer moves to another firm to work for opposing counsel, the nonlawyer's conflict of interest is imputed to the rest of the firm, thereby disqualifying opposing counsel. *See, e.g., Owens v. First Family Fin. Servs., Inc.*, 379 F.Supp.2d 840(III) (S.D.Miss.2005); *Zimmerman v. Mahaska Bottling Co.*, 270 Kan. 810, 19 P.3d 784 (2001); *T.S.L. v. G.L.*, 976 So.2d 793 (La.Ct.App.

> 200[8] ).... Under [the majority] approach, rather than automatic imputation and disqualification of the new firm, lawyers hiring the nonlawyer can implement screening measures to protect any client confidences that the nonlawyer gained from prior employment. *See, e.g., In re Columbia Valley Healthcare Sys., L.P.*, 320 S.W.3d 819(II)(III) (Tex. 2010); *Leibowitz v. Eighth Judicial Dist. Court of Nev. ex rel. Cnty. of Clark*, 119 Nev. 523, 78 P.3d 515, 521 (2003); *Green v. Toledo Hosp.*, 94 Ohio St.3d 480, 764 N.E.2d 979(i) (2002); *Hayes v. Central States Orthopedic Specialists, Inc.*, 51 P.3d 562(II) (Okla. 2002); *Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d 831, 835 (Tex.1994); *In re Complex Asbestos Litig.*, 232 Cal. App.3d 572, 592–96, 283 Cal.Rptr. 732 (1991); *Restatement (Third) of Law Governing Lawyers* § 123, Comment (f) (2000); Cecile C. Edwards, *Law Firm Disqualification and Nonlawyer Employees: A Proposal for a Consistent Analysis*, 26 Miss. C.L.Rev. 163(V) (2007); *ABA Comm. on Ethics and Prof'l Responsibility*, Informal Op. 88–1526 (1988). After reviewing both approaches, we join today with "the majority of professional legal ethics commentators, ethics tribunals, and courts[, which] have concluded that nonlawyer screening is a permissible method to protect confidences held by nonlawyer employees who change employment." *Leibowitz*, 78 P.3d at 520.

*Hodge*, 758 S.E.2d at 319. "[M]ost authorities hold that the differences between lawyers and their nonlawyer assistants instead justify a *relaxation* of the imputation rules." Geoffrey C. Hazard, Jr., W. William Hodes, and Peter R. Jarvis, 1 *The Law of Lawyering*, § 15.16 (4th ed.2015). "Under this approach, timely screening of the migratory personnel will be recognized

as sufficient to remove the imputation and resulting disqualification that would have applied if the lateral hires had been lawyers." *Id.*

[¶ 15] The North Dakota Rules of Professional Conduct regulate a lawyer's conduct in supervising nonlawyers so as to conform to the lawyer's own professional obligations. *See* N.D.R. Prof. Conduct 5.3. The Annotated Rules of Professional Conduct, Rule 5.3, annot. at p. 451–52 (7th ed.2011), further explains the obligation of lawyers with managerial authority under Rule 5.3(a):

> Partners, and lawyers with comparable managerial authority, have an obligation to "make reasonable efforts" to establish measures to ensure that the conduct of nonlawyer assistants is compatible with the lawyers' ethical duties. Such measures include instructing nonlawyers about lawyers' ethical duties (especially the duty to maintain client confidences), supervising nonlawyers in a way that does not permit them to engage in the unauthorized practice of law, and, when appropriate, excluding nonlawyers from involvement in particular client matters. *See, e.g., People v. Smith,* 74 P.3d 566 (Colo.O.P.D.J.2003) (no violation of Rule 5.3(a); lawyer had in place procedures to reasonably assure that legal assistant would act in manner compatible with lawyer ethics rules, but assistant failed to follow them); *Stewart v. Bee-Dee Neon & Signs, Inc.,* 751 So.2d 196 (Fla.Dist.Ct.App.2000) (nonlawyer employees who formerly worked for firm representing adverse party in litigation should be admonished not to discuss matter with anyone in new firm, and access to information about case should be restricted; court noted that former firm has duty under Rule 5.3 to instruct departing nonlawyer employees about ethical obligation not to disclose confidences of firm's clients); *In re Kellogg* [269 Kan. 143], 4 P.3d 594 (Kan. 2000) (lawyer failed to train employees who mishandled service of summons, failed to docket court date, and failed to enclose refund check in letter of apology from lawyer to client); *In re Farmer* [263 Kan. 531], 950 P.2d 713 (Kan.1997) (lawyer has affirmative duty to ensure that nonlawyer assistants do not give legal advice to clients or other callers); *Disciplinary Counsel v. Crosby* [124 Ohio St.3d 226], 921 N.E.2d 225 (Ohio 2009) (lawyer failed to train or supervise assistant regarding proper use of client trust account); *State ex rel. Okla. Bar Ass'n v. Patmon,* 939 P.2d 1155 (Okla. 1997) (lawyer regularly allowed secretary to sign lawyer's name on documents and file them with court without oversight); Ala. Ethics Op. 2008–01 (2008) (lawyer using services of nonlawyer employee to communicate with clients in foreign language is responsible for accuracy of information relayed between employee and client); Colo. Ethics Op. 119 (2008) (supervising lawyer has duty to make reasonable efforts to ensure firm has "appropriate technology and systems in place so that subordinate lawyers and nonlawyer assistants can control transmission of metadata"); Me. Ethics Op. 186 (2004) (adequate screening of nonlawyer employee to avoid conflicts of interest may fulfill lawyer's duty to make "reasonable efforts" to ensure nonlawyer's conduct is compatible with professional responsibilities of lawyer); N.Y. State Ethics Op. 762 (2003) (law firm with associates licensed only in foreign countries must ensure their compliance with ethics rules of their home jurisdiction does not compromise firm's compliance with New York Code).

Rule 5.3(b) also requires a supervising lawyer to make reasonable efforts to ensure the nonlawyer assistant's conduct is com-

patible with the lawyer's ethical obligations, so in other words mere compliance with Rule 5.3(a) "does not suffice if the lawyer also has direct supervisory authority over the nonlawyer whose conduct is in question." *See* Annotated Rules of Prof. Conduct, Rule 5.3 annot. at p. 452.

[¶ 16] Generally, N.D.R. Prof. Conduct 1.10 allows for screening to address imputed disqualification under certain circumstances. As discussed in the Annotated Model Rules of Prof. Conduct, Rule 1.10 annot. at p. 184, nonlawyer conflicts are not imputed to firm lawyers when the nonlawyers are screened:

> Comment [4] [to the ABA's Model Rules], added in 2002, reflects the clear majority view that conflicts of non-lawyers as well as conflicts arising from work done before a person became a lawyer, ordinarily will not be imputed to firm lawyers if the nonlawyer is screened to protect confidential information. ("Screened" is defined in Rule 1.0(k) and Comments [8], [9], and [10] to Rule 1.0). *See* American Bar Association, *A Legislative History: The Development of the ABA Model Rules of Professional Conduct,* 1982–2005, at 254 (2006); *see also* ABA Informal Ethics Op. 88–1526 (1988) (paralegals and independent contractors such as investigators may be screened to avoid imputed disqualification).

Although we have not included Model Rule 1.10 comment 4, into N.D.R. Prof. Conduct 1.10, our rule also allows for screening and we believe there is a certain logic in screening nonlawyers with conflicts.

[¶ 17] In this case, the hearing panel specifically relied on *ABA Comm. on Ethics and Prof'l Responsibility,* Informal Op. 88–1526 (1988), which states:

> A law firm that employs a nonlawyer who formerly was employed by another firm may continue representing clients whose interests conflict with the interests of clients of the former employer on whose matters the nonlawyer has worked, as long as the employing firm screens the nonlawyer from information about or participating in matters involving those clients and strictly adheres to the screening process described in this opinion as long as no information relating to the representation of the clients of the former employer is revealed by the nonlawyer to any person in the employing firm. In addition, the nonlawyer's former employer must admonish the nonlawyer against revelation of information relating to the representation of clients of the former employer.

Under the circumstances of this case, we conclude a nonlawyer employee may work for an opposing firm, subject to an appropriate screening process. Here, however, Johnston did not screen Chrzanowski from West's case against Hanson, but instead put Chrzanowski primarily in charge of the matter.

[¶ 18] Johnston argues, nonetheless, the hearing panel did not conduct the appropriate analysis under Rule 1.7. He contends the panel provided no analysis nor did it indicate the underlying facts supporting the broad assertions that Chrzanowski learned confidential information from the Hansons' bankruptcy file while employed with Farroh which subsequently was used against Hanson in the West file, or that Chrzanowski's ability to consider, recommend, or carry out any action was influenced by his former representation. Further, Johnston argues disciplinary counsel did not establish what "confidential information," if any, Chrzanowski may have learned at the Farroh law office and to what extent Chrzanowski had worked on the Hanson file while employed with Farroh. Rather, Johnston asserts that the record reveals no prohibited

conflict and that the paralegal was vetted for a potential conflict in an appropriate manner. He also argues there has been no evidence he or the paralegal he was supervising was shown to have "actual knowledge" of protected information, as required under Rule 1.9. He argues disciplinary counsel failed to establish by clear and convincing evidence violations of Rules 1.7, 1.9, and 5.3.

[¶ 19] Rule 1.7(a) and (c), N.D.R. Prof. Conduct, addresses general conflicts of interest:

(a) A lawyer shall not represent a client if the lawyer's ability to consider, recommend, or carry out a course of action on behalf of the client will be adversely affected by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests.

. . . .

(c) A lawyer shall not represent a client if the representation of that client might be adversely affected by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

[¶ 20] "Conflicts of interest affect a lawyer's loyalty, which 'is an essential element in the lawyer's relationship to a client.'" *In re Disciplinary Action Against Bullis*, 2006 ND 228, ¶ 13, 723 N.W.2d 667 (quoting Comment [1], N.D.R. Prof. Conduct 1.7). Further, N.D.R. Prof.

Conduct 1.9 promotes the lawyer's obligation of confidentiality, stating:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing.

(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client

(1) whose interests are materially adverse to that person; and

(2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter;

unless the former client consents in writing.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) use information relating to the representation to the disadvantage of the former client in the same or a substantially related matter except as these Rules would require or permit with respect to a client, or when the information has become generally known; or

(2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

[¶ 21] Under an earlier version of this rule, we explained that "a lawyer may not represent another client in the same mat-

ter in which that client's interests are materially adverse to the interest of the former client, or, without a former client's consent, represent another client in a substantially related matter in which that client's interests are materially adverse to the interests of the former client." *Continental Res., Inc. v. Schmalenberger*, 2003 ND 26, ¶ 13, 656 N.W.2d 730. In this context we explained the application of the "substantial relationship" test:

> The substantial relationship test *presumes a lawyer acquired confidential information from a former client* if the current representation of a client whose interests are adverse to those of the former client is the same as or substantially related to the former representation. ABA/BNA, *Lawyers' Manual on Professional Conduct* 51:201 (2002). "The test does not require a detailing of the confidences allegedly transmitted, nor must confidences actually have passed between the former client and the lawyer." *Annotated Model Rules of Prof. Conduct* Rule 1.9, p. 153 (3d ed.1996).

*Continental Res.*, at ¶ 15 (emphasis added).

[¶ 22] Here the hearing panel noted Johnston testified he informed West that Chrzanowski had worked for attorney Farroh and admitted Chrzanowski "had had a supporting role in the bankruptcy case." The panel also found the second lawsuit commenced in the state court in 2011 against Corey Hanson addressed a common set of facts and issues. The panel found Chrzanowski became the "primary worker" on West's file against Hanson. The panel concluded the disciplinary counsel had met its burden to show Chrzanowski's prior employment would have required him to come into contact with privileged materials, including attorney-client communications and work product, be-

cause of "the common set of facts and the same or substantially related matters documented within the Bankruptcy Order and District Court Complaint and the admissions by Respondent Johnston."

[¶ 23] On the basis of our review of the record, we agree with the hearing panel that Johnston should have screened Chrzanowski from the West matter, rather than assigned him to work closely on it. Chrzanowski had previously been a paralegal in the bankruptcy proceedings for the Hansons and was subsequently Johnston's paralegal to collect West's judgment debt against Hanson, which had also been at issue in the adversary proceedings in bankruptcy. Johnston essentially allowed Chrzanowski, working as his paralegal, to "switch sides" in the litigation to attempt to collect West's debt against Corey Hanson. On these facts, we conclude Johnston did not put measures in place to obtain compliance with his obligations under Rules 1.7 and 1.9, as required under Rule 5.3. We further conclude Johnston failed to make reasonable efforts to ensure that his paralegal's conduct was compatible with Johnston's professional obligations.

[¶ 24] We conclude clear and convincing evidence establishes that Johnston violated N.D.R. Prof. Conduct 5.3.

### B

[¶ 25] The hearing panel found Johnston failed to adequately supervise paralegal Chrzanowski when he held Chrzanowski out as a lawyer and turned West's legal matters over to Chrzanowski, in violation of N.D.R. Prof. Conduct 5.3 and 5.5.

[¶ 26] Disciplinary counsel contends Johnston assigned "nondelegable" matters to Chrzanowski in the West matter and failed to make reasonable efforts to ensure West was aware Chrzanowski was not licensed to practice law. Johnston

responds no evidence establishes that Chrzanowski was not supervised or that Johnston did not remain ultimately responsible for all of the work completed. Johnston contends he supervised and signed every pleading in West's case, Chrzanowski did not perform any duties reserved to a licensed lawyer, and Chrzanowski did not hold himself out at any time as anything but a paralegal. "Unnecessary 'stacking' or 'piling on' of rule violations for the same conduct is discouraged." *Gerber v. Disciplinary Board*, 2015 ND 217, ¶ 16, 868 N.W.2d 861 (quoting *In re Disciplinary Action Against Carpenter*, 2015 ND 111, ¶ 20, 863 N.W.2d 223).

[¶ 27] As an additional violation of N.D.R. Prof. Conduct 5.3, the hearing panel has recommended Johnston be reprimanded for failing to supervise his paralegal because he purportedly held Chrzanowski out as a lawyer and turned West's legal matter over to him in violation of N.D.R. Prof. Conduct 5.5. We do not consider this issue because, even if the conduct violated the rule, the sanction would not be affected. *See Carpenter*, 2015 ND 111, ¶ 20, 863 N.W.2d 223.

### C

[¶ 28] The hearing panel found Johnston charged and collected an unreasonable fee in violation of N.D.R. Prof. Conduct Rule 1.5(a), which precludes lawyers from charging an unreasonable fee and provides:

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

Comment 1 to N.D.R. Prof. Conduct 1.5 further explains:

Paragraph (a) requires that lawyers charge fees that are reasonable under the circumstances. The factors specified in (1) through (8) are not exclusive. Nor will each factor be relevant in each instance. Paragraph (a) also requires that expenses for which the client will be charged be reasonable . . . .

[¶ 29] Disciplinary counsel argues this case is not merely a contractual dispute over fees, but involves charges that exceed the bounds of N.D.R. Prof. Conduct 1.5(a) "reasonableness," rising to the level of lawyer misconduct. Disciplinary counsel contends the hearing panel correctly concluded Johnston exceeded the bounds of reasonableness when he billed approximately $24,000 to attempt to recover his client's $15,000 investment from an individual who was financially insolvent.

[¶ 30] Johnston argues, however, that the hearing panel erred when it found excessive fees and disgorged the paralegal fee earned in securing a judgment in the client's favor. Johnston also contends the hearing panel misapplied the law in hold-

ing Chrzanowski had been billed at an "attorney rate." Johnston asserts a fee agreement for services would have been generated and provided to West near the beginning of the case in 2008, although neither he nor West provided a signed copy. Johnston also asserts West received regular statements outlining hourly rates of service and work performed and the statements cover a five-year period from approximately August 2008 through July 2013.

[¶ 31] Johnston also contends the hearing panel erred in finding he had charged an unreasonable fee of approximately $24,000 and had failed to inform the client of the risks of collection. Johnston contends his clients wanted to push the matter to obtain a judgment, and he ultimately secured a judgment of approximately $40,000 against Hanson. Johnston testified West was informed of the risks associated with litigating and West continued to demand work on the file. Johnston argues there is no basis for the hearing panel's finding he charged excessive fees.

[¶ 32] Here it is undisputed that Johnston charged and billed $150 per hour for Chrzanowski's services between 2011 and 2012. The hearing panel found that Chrzanowski's previous employer had also billed $150 per hour for his paralegal services and that Johnston presented proof Chrzanowski's rate had been accepted by the bankruptcy court as reasonable before Chrzanowski had become an employee of Johnston's office. The hearing panel also found disciplinary counsel failed to present any evidence that refuted Johnston's evidence regarding the rate or prevailing paralegal rates in Grand Forks for paralegals with similar education and training. Evidence also established Chrzanowski received his juris doctorate in 1999—one year before Johnston—and was an experienced and knowledgeable paralegal. We conclude the evidence established that a $150 per hour rate was not per se unreasonable for a skilled paralegal.

[¶ 33] In analyzing N.D.R. Prof. Conduct 1.5(a) regarding whether Johnston's total fee was reasonable, we conclude the hearing panel erred in focusing primarily on the amount of fees expended in unsuccessfully collecting on the judgment. Johnston successfully prevented the $15,000 debt from being discharged in the Hansons' bankruptcy proceedings and eventually reduced the debt to about a $40,000 judgment against Hanson. Evidence also shows Johnston provided West with billing statements detailing the various efforts to collect the Hanson debt. While the judgment debtor may be presently insolvent, presumably the judgment could be renewed and would also continue to accrue post-judgment interest. Considering the multiple proceedings and length of time to secure the judgment, we cannot conclude the amount of fees was unreasonable under these circumstances.

[¶ 34] On the basis of our review of the record, we conclude clear and convincing evidence does not establish that Johnston violated N.D.R. Prof. Conduct 1.5.

IV

[¶ 35] When imposing a sanction, this Court considers: "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." N.D. Stds. Imposing Lawyer Sanctions 3.0. Generally, a reprimand is appropriate "when a lawyer negligently reveals information relating to representation of a client not otherwise lawfully permitted to be disclosed, and this disclosure causes injury or potential injury to a client," N.D. Stds. Imposing Lawyer Sanctions 4.23, or "when a lawyer is negligent in determining

whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client." N.D. Stds. Imposing Lawyer Sanctions 4.33. *See also* N.D. Stds. Imposing Lawyer Sanctions 9.22(a), (i), and 9.32(e) (addressing aggravating and mitigating factors). We conclude a reprimand is the appropriate sanction in this case.

[¶ 36] "The assessment of costs is a sanction imposed when a lawyer has engaged in professional misconduct." *In re Disciplinary Action Against Feland,* 2012 ND 174, ¶ 48, 820 N.W.2d 672. "Under N.D.R. Lawyer Discipl. 1.3(D), costs and expenses of the disciplinary proceeding must be assessed against a disciplined attorney '[u]nless otherwise ordered by the court or hearing panel.'" *Feland,* at ¶ 48. We have thus held we have discretion to "'otherwise order' payment of costs and expenses." *Id.*

[¶ 37] In this matter, we have specifically held that clear and convincing evidence did not support a violation of N.D.R. Prof. Conduct 1.5. We therefore believe it would be appropriate to require Johnston to pay partial costs and expenses of the disciplinary proceedings in the amount of $5,523.74, representing approximately two-thirds of the total costs and expenses. *See Hoffman,* 2013 ND 137, ¶ 36, 834 N.W.2d 636 (ordering payment of about one-third of the total costs and expenses); *Feland,* 2012 ND 174, ¶ 50, 820 N.W.2d 672 (ordering payment of partial costs and expenses representing fifty percent of the total); *In re Disciplinary Action Against Ward,* 2005 ND 144, ¶ 22, 701 N.W.2d 873 (requiring payment of twenty percent of total costs and expenses when attorney was found to have committed only one of five alleged violations). Likewise, we order Johnston to pay partial costs and expenses of the disciplinary proceeding in the amount of $5,523.74.

## V

[¶ 38] We order that Johnston be reprimanded; that he complete six hours of Continuing Legal Education within 180 days on conflicts of interest in addition to the mandatory requirements; and that he pay $5,523.74 for the costs and expenses of the disciplinary proceedings, payable to the Secretary of the Disciplinary Board within 60 days.

[¶ 39] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, DANIEL J. CROTHERS, LISA FAIR McEVERS, and CAROL RONNING KAPSNER, JJ., concur.